UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN LUGO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M. STAINER, et al.,<br><br>　　　　　Defendants. | CASE No. 1:13-cv-01603-MJS<br><br>**ORDER DISMISSING ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM (ECF No. 24)**<br><br>**DISMISSAL COUNTS AS STRIKE PURSUANT TO 28 USC § 1915(g)**<br><br>**CLERK TO TERMINATE ALL PENDING MOTIONS AND CLOSE CASE** |

## I.　PROCEDURAL HISTORY

Plaintiff Ruben Lugo, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 in the Central District of California on March 4, 2013. (ECF No. 3.) Plaintiff's case was transferred to the Eastern District after all but one of the claims in his Second Amended Complaint had been dismissed with prejudice by the Central District. (ECF No. 14.) The action thus proceeds on Plaintiff's remaining claim that his confinement in SHU at CCI Tehachapi violates the Eighth Amendment (ECF No. 22). Plaintiff's Third Amended Complaint (ECF No. 24) is before the Court for screening.

Plaintiff has consented to Magistrate Judge Jurisdiction (ECF No. 23).

1

## II. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff has been incarcerated in the Special Housing Unit (SHU) at CCI-Tehachapi since 2009, when he was validated as an associate of the Mexican Mafia. Plaintiff alleges that in SHU, he suffers "under conditions of extreme isolation, sensory deprivation, and restricted movement." (ECF No. 24, at 14.) Plaintiff describes the exercise, visitation, and telephone policies, as well as the lack of programming, as particularly onerous.

His allegations can be summarized essentially as follows:

Although SHU prisoners are supposed to get 10 hours per week of time outside, Plaintiff alleges that he typically gets only six due to space limitations, lockdowns, staff training, and "other 'emergencies.'" (ECF No. 24, at 15.)  The six hours that prisoners do get are spent in "single-occupancy kennels, which measure approximately 10' x 20'" (Id.)

Plaintiff alleges that SHU prisoners also get less visitation time than prescribed. Because of the limited number of visitation booths and the large number of prisoners, not all prisoners are able to have the minimum one-hour weekly visit with family members provided for by regulation.[1] Instead, visits are scheduled a week in advance on a first-come, first-serve basis.  Many would-be visitors call every week, only to be told that slots have already been filled. Plaintiff alleges he has been cut off from his family: his relationship with his wife has suffered, he has not seen or talked to his children since 2009, and he has not met any of his grandchildren.  The isolation Plaintiff feels is heightened by the fact that he is not allowed to talk to family by phone.  Instead, "the only means of communication available to [him] is the U.S. Mail," which is subject to surveillance.

---

[1] Plaintiff does not cite to a regulation or other formal guideline for visitation.

Plaintiff also complains that he does not have access to rehabilitative or educational programming in SHU. Prior to 2009, he earned his GED, took community college courses, acquired vocational training, and participated in substance abuse support groups and charitable fundraisers.  CCI does not provide such opportunities to him in SHU – instead, he seeks out certificate programs that he can complete through the mail.

The defendants relevant to Plaintiff's conditions of confinement claim are (1) Matthew Cate, the former Secretary of Corrections; and (2) Michael Stainer, the Warden of CCI.[2]

## IV.     ANALYSIS

Plaintiff alleges that his conditions in SHU amount to cruel and unusual punishment in violation of the Eighth Amendment.  To the extent he argues, generally, that conditions resulting in "extreme isolation," "sensory deprivation," and "restricted movement" are unconstitutional, his pleadings are too vague to establish that he is "entitled to relief" under Fed. R. Civ. P. 8(a)(2). To the extent he argues, more narrowly, that his limited access to exercise, visitation, use of the telephone, and rehabilitative programming are unconstitutional, he has not pleaded sufficient facts to establish one or both prongs of the test for Eighth Amendment violations.  In addition, Plaintiff has not adequately linked any policies to particular acts or omissions by Defendant Cate. Because Plaintiff has already had multiple opportunities to amend, the court will dismiss his claims without leave to amend further.

---

[2] The three other defendants appear to be associated with Plaintiff's dismissed due process claims: Provine and Covello were both employed at Ironwood State Prison, and Buechnell was a high level official in the Office of Correctional Safety, which oversees the "gang management unit responsible for investigating prisoners suspected of gang affiliation."

**A. Pleading Standard Under Rule 8(a)2)**

Correctional policies and practices that systematically deprive inmates of social interaction, physical activity, and intellectual and sensory stimulation can form the basis of an Eighth Amendment claim. See Parsons v. Ryan, 754 F.3d 657, 676 (9th Cir. 2014)(cognizability of claim that "policies and practices of statewide and systemic application" exposed inmates to substantial risk of harm is "firmly established in our constitutional law.")  Neither the broadness of such a claim nor the many origins of the harm, however, excuse the Plaintiff from his ordinary duty of pleading sufficient facts to indicate that he is "entitled to relief," as required by Fed. R. Civ. P. 8(a)(2).  "[A] plaintiff's obligation to provide the grounds of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Here, Plaintiff has provided little more than conclusory assertions that he has suffered "extreme isolation" and "sensory deprivation" due to "a wide range of punitive and dehumanizing measures." (ECF No. 24, at 14.) Aside from the four policies the Court examines below, Plaintiff has not elaborated on what these "dehumanizing measures": were, nor how the isolation and deprivation have affected him.  Without more detailed information, Plaintiff's broad attack on the conditions in SHU is too vague to establish that he is entitled to relief.  Therefore, he fails to state a cognizable Eighth Amendment claim on this basis.

**B. Eighth Amendment – Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347

5

(1981)). Conditions of confinement may be, and often are, restrictive and harsh; however, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Conditions devoid of legitimate penological purpose or contrary to evolving standards of decency violate the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346; Morgan, 465 F.3d at 1045 (quotation marks and citations omitted).

Eighth Amendment claims have both subjective and objective components. An inmate must show that prison officials subjectively acted with deliberate indifference to his health and safety, thereby objectively depriving him of the minimal civilized measure of life's necessities. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)(citing Wilson v. Seiter, 501 U.S. 294, 303-303 (1991); Rhodes, 452 U.S. at 347).

**1. Subjective Prong**

To act with deliberate indifference, a prison official must know of and disregard an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837 (1994); Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000). Thus, to make a cognizable conditions of confinement claim, a plaintiff must show that defendants "had actual knowledge of plaintiff's basic human needs and deliberately refused to meet those needs. Whether an official possessed such knowledge 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" Johnson, 217 F.3d at 734 (citing Farmer, 511 U.S. at 842).

Plaintiff has not pleaded facts that would support the conclusion that Defendant acted sufficiently culpable intent, i.e., with deliberate indifference to Plaintiff's health and safety, as opposed to a perceived need to meet legitimate penological goals.

**2. Objective Prong**

The "minimal civilized measure of life's necessities" includes adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson, 217 F.3d at 731 (quotation marks and citations omitted). In determining whether a deprivation is sufficiently serious, "the circumstances, nature, and duration of the deprivation," must be considered: "the more basic the need, the shorter time it can be withheld." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000)(citations omitted).

**3. Analysis of Conditions**

The Court analyzes below the policies Plaintiff claims are unconstitutional:

**a.  Outdoor Exercise**

Depriving inmates of outdoor exercise can violate the Eighth Amendment. E.g., LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993); Spain v. Procunier, 600 F.2d 189 (9th Cir. 1979).  The Ninth Circuit has not specified exactly how much exercise time passes constitutional muster, though it has found 45 minutes per week insufficient, Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994), and agreed that two hours per week was enough, Pierce v. Cty. of Orange, 526 F.3d 1190 (9th Cir. 2008).  Moreover, in emergency situations, prison officials may constitutionally curtail inmates' access to outdoor exercise altogether until order is restored. Noble v. Adams , 646 F.3d 1138, 1143 (9th Cir. 2011); Norwood v. Vance, 591 .3d 1062, 1070 (9th Cir. 2010).  It is not clearly settled "how, according to the Constitution, or when," an institution must reinstitute normal exercise routines following a lockdown or other emergency, but prison officials are "entitled to wide ranging deference" in this regard. Noble, 646 F.3d at 1143. Only if officials' judgment "manifest[s] either deliberate indifference or an intent to inflict harm" will a court conclude that deprivation of exercise time violates the Eighth

7

Amendment in an emergency situation. See id.

Plaintiff has not pleaded sufficient facts to establish that he received unconstitutionally limited exercise time. Plaintiff seems skeptical of Defendants' justifications for reducing yard time[3] but does not provide any facts suggesting that the lockdowns were imposed without justification or that the emergencies were not legitimate. Even if there had not been lockdowns, however, Plaintiff's yard time would likely have been constitutional. Six hours per week over a period of years is substantially more than both the two hours per week upheld in Pierce, 526 F.3d at 1213 in a non-emergency situation, and the complete deprivation of outdoor time for nine months upheld in Noble, 646 F.3d at 1140-1141, following a lockdown. Therefore, Plaintiff fails to state an Eighth Amendment claim in connection with his exercise time.

### b. Visitation

Inmates do not have a clearly established constitutional right to receive visits, in particular contact visits. Overton v. Bazzetta, 539 U.S. 126, 131 (2003); Dunn v. Castro, 621 F.3d 1196, 1202 (9th Cir. 2010); Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002); Toussaint v. McCarthy, 801 F.2d 1080, 1114 (9th Cir. 1986)("To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society"). The Supreme Court has upheld a variety of restrictions on visitation (including denials of contact visitation, as well as limitations on the people allowed to visit an inmate) against First, Eighth, and Fourteenth Amendment challenges. Overton, 539 U.S. at 133; accord Dunn, 621 F.3d at 1206 (upholding temporary prohibition on inmate's right to visitation with his children on First, Eighth, and Fourteenth Amendment grounds). Only where *all* visitation privileges have

---

[3] He puts "emergencies" in quotation marks. (ECF No. 24, at 15.)

been revoked permanently or for a substantial period of time will the deprivation take on constitutional proportions. See Overton, 539 U.S. at 130; Dunn, 621 F.3d at 1204.

Here, Plaintiff has not provided enough facts to state a cognizable claim based on visitation restrictions. On the one hand, Plaintiff has been in SHU, and therefore subject to its more restrictive visitation rules, for six years, a substantial amount of time. On the other, he has not alleged that all of his visitation privileges were revoked. Nor has he pleaded sufficient facts to indicate that CCI's first-come, first-serve policy is so restrictive as to amount to a *de facto* revocation: in other words, he has not indicated that the reason he has been unable to see his children and grandchildren is because of the visitation policy, as opposed to some other cause. He states that "visitors call week after week – only to be put on hold and told two hours later that 'all the slots have been filled. Try next week'" (ECF No. 24, at 16); however, he does not specify that this has been his *own* family's experience. Without facts clearly stating the injury to himself, Plaintiff fails to state a cognizable claim on the basis of the visitation policy in SHU.

### c. Telephone

Generally, deprivation of access to the telephone, on its own, does not give rise to a constitutional violation. Williams v. ICC Committee, 812 F.Supp. 1029, 1034 (N.D. Cal. 1992); Haynes v. Sisto , Civ. No. S-08-2177 2010 WL 2076970 (E.D. Cal. May 24, 2010)(concluding that 4.5 month deprivation of "access to telephone calls and visitors" did not state an Eighth Amendment claim); see also Overton, 539 U.S. at 132 (finding that where one means of communication is cut off, alternatives "need not be ideal," but only "available"); Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002)(First Amendment right to communicate with family did not guarantee particular means of communication). However, lack of access to *any* means of communicating with people

outside of prison may be unconstitutional.  See Overton, 539 U.S. at 135 (suggesting that access to alternatives was part of justification for concluding visitation restrictions were constitutional); Ashker v. Brown, No. C 09-5796 2013 WL 1435148 (N.D. Cal. April 9, 2013)(concluding that SHU inmates' "prolonged social isolation," which included lack of telephone access and contact visits, met objective prong of Eighth Amendment test).

Here, Plaintiff has not pleaded sufficient facts to demonstrate that his lack of telephone access amounted to cruel and unusual punishment.  Although Overton and Ashker suggest that the deprivation of contact with people outside of prison can contribute to an Eighth Amendment violation, Plaintiff has not established that he has been deprived of contact.  As discussed above, he did not plead sufficient facts to indicate that the visitation policy prevented him from seeing his family.  Thus, the Court finds that although he could not place calls, he still had access to the imperfect visitation policy. As the Supreme Court concluded, prisoners need have access to *some* means of communication, not necessarily one that is completely effective.  Here, the non-contact visitation policy meets this low threshold, so the lack of telephone access is not unconstitutional.

### d. Access to Programming

Plaintiff alleges that his lack of access to programming violates his Eighth Amendment rights. However, the Ninth Circuit has held that the lack of rehabilitative programs "simply does not amount to the infliction of pain" and does not deprive an inmate of the minimal civilized measure of life's necessities. Hoptowit v. Ray, 682 F.2d 1237, 1254 (9th Cir.1982); Hoban v. CDCR, No. 1;09-cv-1752 2010 WL 5136026, at *4 (E.D. Cal. Dec. 10, 2010); see also Stewart v. Winter, 669 F.2d 328, 336 n. 19 (5th Cir.1982) ("[F]ailure to provide a rehabilitation ... does not, by itself, constitute cruel and

unusual punishment."). Accordingly, Plaintiff's lack of access to programs does not state an Eighth Amendment claim.

### C. Section 1983 Linkage Requirement

Under § 1983, plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Government officials may not be held liable for the actions of their subordinates under a theory of *respondeat superior*. Iqbal, 129 S .Ct. at 1948. Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his or her own individual actions or omissions. Id.  A defendant acting in a supervisory capacity is liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, Plaintiff has not shown Defendant Cate's involvement in the alleged deprivations of Plaintiff's constitutional rights. Plaintiff asserts, in conclusory fashion, that Cate "created, authorized, condoned, ratified, approved, or knowingly acquiesced" in the restrictive policies at CCI, but he provides no factual support for this assertion.  Without more detailed information about the chain of command within CDCR, the Court cannot assume that Cate was involved in formulating particular policies at CCI, much less knew or should have known when those policies were allegedly not being followed.  Therefore, Plaintiff fails to state a claim against Defendant Cate.

**IV. CONCLUSION AND ORDER**

Plaintiff's third amended complaint fails to state any cognizable claim.  He was previously advised of pleading deficiencies and afforded the opportunity to correct them.  No useful purpose would be served by once again pointing out the deficiencies and giving another opportunity to correct them.  Further leave to amend appears futile and

should be denied.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's First Amended Complaint (ECF No. 24) is DISMISSED for failure to state a claim;

2. This action is DISMISSED WITH PREJUDICE for failure to state a claim; dismissal shall count as a strike pursuant to 28 U.S.C. § 1915(g). Silva v. Di Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011); and

3. Any and all pending motions shall be terminated and the Clerk of Court shall CLOSE this case.

IT IS SO ORDERED.

Dated:  March 31, 2015          /s/ *Michael J. Seng*
                                UNITED STATES MAGISTRATE JUDGE